# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JENI PORCHE and MARGARET L. HOSTY, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )    02 C 7707 |
| ROGER ODEN, ALBERT CHESSER, DEBRA BOYD, DEBRA CONWAY, STUART FAGAN, PAUL KEYS, PEGGY WOODARD, HARRY KLEIN, WILLIAM McGEE, KRISTI DeLAURENTIS, LORINE SAMUELS, KATHLEEN FIELD ORR, JACK BEAUPRE, BRUCE FRIEFELD, THOMAS STEPKE, DEBORAH HOLDSTEIN, RASHIDAH JAMMI' MUHAMMAD, JOYCE KENNEDY and LORRAINE SIBBETT, | )<br>)<br>)    Judge Ronald A. Guzmán<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Jeni Porche and Margaret L. Hosty have sued Roger Oden, Albert Chesser, Debra Boyd, Debra Conway, Stuart Fagan, Paul Keys, Peggy Woodard, Harry Klein, William McGee, Kristi Delaurentis, Lorine Samuels, Kathleen Field Orr, Jack Beaupre, Bruce Friefeld, Thomas Stepke, Deborah Holdstein, Rashidah Jammi' Muhammad, Joyce Kennedy and Lorraine Sibbett for violating their constitutional rights as guaranteed by the First, Fourth, and Fourteenth Amendments pursuant to 42 U.S.C. § ("section") 1983. Defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(e). For the reasons provided in this Memorandum Opinion and Order, the Court grants the motion.

As an initial matter, plaintiffs have agreed to dismiss the following defendants: Beaupre, Conway, DeLaurentis, Fagan, Field Orr, Friefeld, Keys, Klein, McGee, Oden, Samuels, Sibbett,

Stepke and Woodard. (*See* Defs.' Mot. Summ. J., Ex. A, Letters of 12/10/08 & 12/16/08.) Accordingly, the Court grants defendants' motion for summary judgment as to these defendants.

Further, plaintiffs have agreed to dismiss all claims against the remaining defendants, Chesser, Boyd, Holdstein, Muhammad and Kennedy, except those based on the following allegations (*see id.*): (1) that plaintiffs were unlawfully detained and denied access to Governors State University's ("GSU") school newspaper's ("the Innovator") office by Chesser and Boyd (*see* Fourth Am. Compl. ¶¶ 25(a), (b)); and (2) plaintiffs' course requirements were unilaterally changed by Holdstein, Muhammad and Kennedy (*see id.* ¶ 25(c)).

## Facts

The following facts are undisputed. Plaintiffs Porche and Hosty were also the plaintiffs in *Hosty v. Governors State University*, case number 01 C 500, a case in which they alleged unconstitutional prior restraints on the publication of the Innovator based in part on events that occurred on October 25, 2000, including GSU's disconnection of the Innovator's office's phone lines and GSU campus police officers' denying them free access to the Innovator's office. (Pls.' LR 56.1(b)(3)(B) ¶¶ 3, 9.)

Hosty and Porche, who were graduate students at GSU at the time, worked for the Innovator from April/May 2000 to April 2001. (*Id.* ¶ 4.) On October 25, 2000, Boyd and Chesser were GSU campus police officers. (*Id.* ¶ 5.) On that day, Boyd asked Hosty to remain in the area of the Innovator's office. (*Id.* ¶¶ 18-19.) Chesser arrived and told Hosty that he wanted a statement from her, but she refused to talk or provide a written statement. (*Id.* ¶¶ 21-23.) Porche was also in the office. (*Id.* ¶ 25.) While they were in the office, both Porche and

2

Hosty made phone calls. (*Id.* ¶¶ 26-27.) Hosty also used the telephone in another office. (*Id.* ¶ 28.) Chesser told Hosty and Porche that they could get their things and leave. (*Id.* ¶ 33.) Dean Pat Carter arrived and asked Chesser to secure the Innovator's office, and so Chesser had the locks changed. (*Id.* ¶ 30.) Plaintiffs were permitted to use the Innovator's office again the next day, but for the next five to six weeks, the campus police would let them into the office and lock up after they left. (*Id.* ¶ 32.)

Defendant Kennedy was GSU's Division Chair for the Division of Liberal Arts, College of Arts and Sciences. (*Id.* ¶ 6.) Defendant Muhammad was a university professor of English at GSU. (*Id.* ¶ 7.) Defendant Holdstein was a university professor of English and rhetoric at GSU and also held different positions within GSU Provost's Office. (*Id.* ¶ 8.) Plaintiffs allege that these defendants have retaliated against them in three ways, by requiring that: (1) each plaintiff finish other English course requirements before she could take English 870 (graduate thesis research), (2) each plaintiff's thesis advisor be tenured or on tenure track and (3) the three members of each plaintiff's thesis committee be tenured or on tenure track. (*Id.* ¶¶ 37-38.)

The relevant course catalog stated: "[G]enerally, the graduate thesis or project will not be done until completing the other core courses and the four additional courses." (*Id.* ¶ 41.) Dr. Muhammad's reading of the course catalog includes English 870, graduate thesis research, as part of the thesis (English 890 course) and students are supposed to complete all other course work before English 870 because the thesis research is a substantial project. (*Id.* ¶ 42.) GSU had no written policy requiring students to complete all other course work prior to taking English 870 and English 890. (*Id.* ¶ 43.)

3

Muhammad told plaintiffs that they had to finish other English course requirements before they could take English 870. (*Id.* ¶ 38.) Hosty thought that the course catalog at the time did not require her to take all of her other English course requirements before she could take English 870. (*Id.* ¶ 39.) Porche also thought that this was not the common practice of the English Department. (*Id.* ¶ 40.)

In a February 2003 letter, Kennedy told plaintiffs that they needed a thesis advisor that was either tenured or on tenure track to instruct them in English 970. (*Id.* ¶ 48.) Kennedy's letter also told plaintiffs that their thesis committee must be comprised of three tenured professors or professors who are on tenure track. (*Id.* ¶ 49.) This was not GSU policy or practice, but it is the optimal circumstance. (*Id.*)

## Discussion

A district court will grant a summary judgment motion "only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Srail v. Vill. of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009). The court "construe[s] all facts and draw[s] all inferences in the light most favorable to the non-moving party." *Id.* "The existence of merely a scintilla of evidence in support of the non-moving party's position is insufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Delta Consulting Group, Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1137 (7th Cir. 2009).

Defendants argue that plaintiffs' claims based on their unlawful detention are barred by res judicata. "[T]he doctrine of claim preclusion or res judicata bars a party from asserting a

4

claim that has already been resolved in another lawsuit between the same parties or those in privity with them, and the doctrine reaches both claims that were actually asserted in an earlier lawsuit and those that could have been asserted but were not." *Russian Media Group, LLC v. Cable Am., Inc.*, 598 F.3d 302, 310 (7th Cir. 2010). "[R]es judicata applies if two claims 'arise from a single group of operative facts, regardless of whether they assert different theories of relief.'" *Id.* (quoting *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 893 (Ill. 1998)).

Plaintiffs concede that all the elements required for the application of res judicata are satisfied save one: the identity of claims. (*See* Pls.' Mem. Law Opp'n Defs.' Refiled Mot. Summ. J. 7.) Defendants argue that there is an identity of claims to the extent that plaintiffs' unlawful detention claims are based on the October 25, 2000 incident that formed the basis for their previous lawsuit. The Court agrees.

In plaintiffs' previous lawsuit, *Hosty v. Carter*, 01 C 500, Hosty and Porche alleged that on October 25, 2000, the Innovator's phone lines were disconnected and GSU police denied them free access to the Innovator's office. (*See, e.g., Hosty v. Carter*, 01 C 500, slip op., at 6 (N.D. Ill. Nov. 13, 2001); Defs.' Ex. J. Hosty Dep. at 95-96 (describing Boyd and Chesser's actions in her 2001 deposition in *Hosty*).) They alleged that their right to freedom of speech and freedom of the press as well as other constitutional rights were infringed, threatened and impeded. (*See, e.g.*, Hosty Compl. ¶ 24.)

In the instant lawsuit, plaintiffs allege that on October 25, 2000, Chesser and Boyd unlawfully detained them. (Fourth Am. Compl. ¶ 25(a), (b).) Plaintiffs' unlawful detention is alleged to have occurred on the same day and been perpetrated by the same officers who were

present when plaintiffs were denied access to the Innovator's office as alleged in their previous lawsuit. (*See* Defs.' Ex. C, Porche Dep. at 37.) Accordingly, these two lawsuits arise from a single core of operative facts. That plaintiffs now assert that the GSU police officers' conduct also constitutes a violation of their Fourth Amendment rights does not change the result because res judicata applies regardless of whether plaintiffs assert different theories of relief. *See Russian Media Group*, 598 F.3d at 310. Accordingly, the Court grants defendants' motion for summary judgment as to plaintiffs' unlawful detention claims.

Next, defendants argue that Holdstein, Muhammad and Kennedy should be afforded qualified immunity with regard to plaintiffs' claims that their course requirements were unilaterally changed. "Government officials performing discretionary functions [are generally provided] with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). A two-step analysis is used to determine whether a defendant is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "When evaluating a qualified immunity claim, we must first decide whether, taken in the light most favorable to the plaintiffs, the facts show that the official's conduct violated a constitutional right." *Finsel v. Cruppenink*, 326 F.3d 903, 906 (7th Cir. 2003). Second, the court asks whether the right was clearly established at the time of the alleged violation. *Saucier*, 533 U.S. at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [public official] that his conduct was unlawful in the situation he confronted." *Id.* at 202. "The Supreme Court recently held that the *Saucier* test is not mandatory and that lower courts may decide, in their discretion, in which order

to answer these two questions." *Baird v. Renbarger*, 576 F.3d 340, 344 (7th Cir. 2009) (referring to *Pearson v. Callahan*, --- U.S. ----, 129 S. Ct. 808, 821 (2009) ("Because the two-step *Saucier* procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case.").). Although qualified immunity is a defense to a section 1983 suit, the plaintiff bears the burden of establishing the two elements of the qualified immunity test. *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999).

Regardless of the order in which the Court addresses the *Saucier* inquiries, plaintiffs have not met their burden of satisfying the elements of the qualified immunity test. First, plaintiffs have not presented evidence from which a reasonable trier of fact could conclude that defendants retaliated against them in response to their constitutionally protected speech. *See Springer v. Durflinger*, 518 F.3d 479, 483 (7th Cir. 2008) (stating that First Amendment retaliation claim requires plaintiffs to establish they had engaged in constitutionally protected speech). Plaintiffs have not provided any facts that would support a rational jury's conclusion that GSU created a designated public forum. Although they apparently attempted to do so in *Hosty, see Hosty v. Carter*, 412 F.3d 731, 736-37 (7th Cir. 2005) (analyzing the first *Saucier* prong and holding that viewing the facts in the record in the light most favorable to the plaintiffs, they had raised a triable issue as to whether the Governors State Student Communications Media Board created a designated public forum), there simply is not enough information in the record before this Court to so hold here. Plaintiffs do not argue that the fact-based holding in *Hosty* with regard to the first prong of *Saucier* would govern this case.

7

Second, even if plaintiffs had presented enough evidence to create a triable issue regarding the first *Saucier* issue, plaintiffs have failed to satisfy their burden as to the second prong. "Even when the general rule has long been clearly established (for instance, the First Amendment bars retaliation for protected speech), the substantive legal doctrine on which the plaintiff relies may facilitate summary judgment . . . ." *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998). For instance, "there may be doubt as to the illegality of the defendant's particular conduct." *Id.* at 593. In such an instance, qualified immunity is applicable because "[p]ublic officials need not predict, at their financial peril, how constitutional uncertainties will be resolved." *Hosty*, 412 F.3d at 739.

Plaintiffs concede, as they must, that in granting GSU's Dean Carter qualified immunity in *Hosty*, the Seventh Circuit held that the law regarding whether students such as Hosty and Porche had the right to publish their articles in the *Innovator* free from interference by GSU faculty and administrators was not clear prior to its June 20, 2005 decision. (Pls.' Mem. Law Opp'n Defs.' Refiled Mot. Summ. J. 11 (citing *Hosty*, 412 F.3d at 739 (reviewing uncertainty of the law in other circuits and stating "[t]his circuit had not spoken on the subject until our panel's opinion, which post-dated Dean Carter's actions")).) Unfortunately for plaintiffs in the instant lawsuit, Holdstein, Muhammad and Kennedy's alleged retaliatory conduct of unilaterally changing plaintiffs' course requirements occurred in 2002-03. (*See, e.g.*, Defs.' Ex. B, Hosty Dep. at 51-52, 83 (stating that in Spring 2002, she spoke to Holdstein, who told her that her thesis advisor must be tenured or on tenured track); *id.* at 45, 77 (stating she received Muhammad's May 2002 email requiring that all prerequisites be completed prior to registering for English 870); *id.* at 52-53, 58, 87-88 (stating she received Kennedy's January/February 2003

letter or email that required all three people on Hosty's thesis committee to be tenured or on tenured track); Defs.' Ex. C, Porche Dep. at 44-45, 68, 92, 141 (stating that she received Muhammad's April 2002 letter requiring that (1) all prerequisites be completed prior to registering for English 870; (2) her thesis advisor be tenured or on tenured track; and (3) the members of the thesis committee be tenured or on tenured track).) Thus, given that *Hosty* was decided *after* Holdstein, Muhammad and Kennedy purportedly changed plaintiffs' course requirements in retaliation for plaintiff's alleged protected speech, it cannot be said that it would have been clear to a reasonable public official in Holdstein, Muhammad and Kennedy's position that their conduct was unlawful in the situation they confronted. Therefore, the Court grants defendants' summary judgment motion as to plaintiffs' claims based on the allegation that Holdstein, Muhammad and Kennedy changed plaintiffs' course requirements.

In sum, the Court grants defendants' summary judgment motion as to plaintiffs' claims based on unlawful detention and changes in their course requirements. This conclusion scotches any conspiracy claims based on these alleged constitutional violations. **SO ORDERED.**

## Conclusion

For the reasons provided in this Memorandum Opinion and Order, the Court grants defendants' motion for summary judgment [doc. no. 256]. This case is hereby terminated.

SO ORDERED    ENTERED: JUL 09 2010 7-9-2010

HON. RONALD A. GUZMAN
U.S. District Judge